UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| TERESA ISAAC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:18-CV-333-HAB |
| | ) | |
| WAL-MART, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On June 17, 2016, Plaintiff Teresa Isaac slipped on a puddle of water at a Wal-Mart store located in Kendallville, Indiana. Isaac filed suit against Wal-Mart alleging negligence, and Wal-Mart now moves for summary judgment in its favor. After reviewing the designated evidence, particularly the security camera footage depicting the area of Isaac's fall, the Court concludes that there are genuine issues of material fact, and Wal-Mart's Motion for Summary Judgment must be denied.

**A.    Factual Background[1]**

**1.    *The Slip***

The accident in question occurred after Isaac and her husband had completed their grocery shopping at the Kendallville Wal-Mart. As Isaac approached a check-out lane, she slipped causing her right leg to slide outward. Isaac was able to catch herself with her hands and did not fall to the floor. When she looked down to see what had caused the slip, Isaac noticed a puddle of clear

---

[1] Wal-Mart also filed a Motion to Strike Portions of Affidavit of Teresa Isaac (ECF No. 29). Because the Court can distinguish which exhibits, affidavits, and statements may properly be considered when deciding whether summary judgment is appropriate, the Court denies Defendant's Motion to Strike. The Court has noted Defendant's objections and will consider the objections to the extent they arise in the Court's summary judgment analysis.

liquid.[2] Isaac has no personal knowledge regarding the identity of the clear liquid or the duration of time the liquid had been on the floor. Isaac further has no personal knowledge of any Wal-Mart employees being aware of the liquid.

**2.    *The Security Camera Footage***

Isaac has designated a two-hour video taken by one of Wal-Mart's security cameras in the area of the fall. (ECF No. 27) Over the course of the hour between the beginning of the video and Isaac's fall, the Court counts no less than thirty individuals or groups of individuals who walked through the area where Isaac slipped. Of those, the Court finds three noteworthy.

At approximately 24:45 of the video, a woman drops what appears to be her wallet or check book onto the floor in the exact area where Isaac slipped. When she picks the item up, she gives no indication that the item is wet or that it has any kind of substance on it. Instead, the woman looks at the contents of the item for several seconds and places it back in her purse.

At approximately 30:10 of the video, a woman walks near the area of Isaac's fall. She loses her flip-flop and looks back at the floor for several seconds. A man walking beside the woman also looks back at the floor for several seconds before walking away.

---

[2] Wal-Mart represents in its Brief that "Isaac did not observe any empty containers on the floor or any footprints or shopping cart tracks going through the spill." (ECF No. 21 at 2). While this representation is technically true, it also lacks important context. Isaac's actual statement was as follows:

> [Q.]    Okay. And were there any other footprints or shopping cart tracks going through the spill?
>
> [A.]    No, well I can't honestly say that because I don't know. Like I said, my shoes had been black looking so I can't honestly say that and I really wasn't looking for that. I was more worried about not getting hurt.
>
> [Q.]    Did you see any empty containers it might have come from?
>
> [A.]    No. But again, I did not look.

(ECF No. 21-2 at 3).

2

Finally, at approximately 36:45 of the video, a woman steps in the area of Isaac's fall. She looks down at the floor for several seconds and appears to rub her shoe on the floor, perhaps attempting to remove a substance from the bottom of the shoe. This is the sole incident that Isaac identifies as evidence supporting her claim that the liquid in which she slipped had been on the floor for an extended period.

All the remaining individuals who passed the area of the fall did so without incident. This includes the elderly and small children, and at least eleven individuals or groups of individuals that walked through the area between 36:45 of the video and Isaac's fall (approximately 1:00:11). The Court notes that at no time is the puddle visible, nor is it apparent from the video when the puddle was created.

**B.     Legal Discussion**

**1.     *Summary Judgment Standard***

Although state law provides the substantive law in a diversity action, the summary judgment procedure is governed by federal law. *Maroules v. Jumbo, Inc.*, 452 N.E.3d 639, 645 (7th Cir. 2006). Twenty-five years ago, the Indiana Supreme Court observed, rightly, that the Indiana state summary judgment standard and the federal summary judgment standard are very different.

> Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence.
> 
> * * *
> 
> In this respect, Indiana's summary judgment procedure abruptly diverges from federal summary judgment practice. Under the federal rule, the party seeking summary judgment is not required to negate an opponent's claim. The movant need only inform the court of the basis of the motion and identify relevant portions of the record which it believes demonstrate the absence of a genuine issue of material fact. The burden then rests upon the non-moving party to make a showing sufficient to establish the existence of each challenged element upon which the non-movant

3

> has the burden of proof. Indiana does not adhere to *Celotex* and the federal methodology.

*Jarboe v. Landmark Comm. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994) (citations omitted). While Indiana does not follow the procedure set forth in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), federal courts, including this one, do. Therefore, in the case at bar the burden is on Plaintiff to establish the existence of the elements she would be required to prove at trial. Failure to do so is fatal to her claim regardless of what an Indiana court may do on the same facts, since "[f]ederal courts may grant summary judgment under Rule 56 . . . even if the state would require the judge to submit an identical case to the jury." *Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 998 (7th Cir. 2016).

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in its favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court

must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

Unlike in Indiana, *see*, *e.g.*, *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014) ("Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits"), summary judgment is not a disfavored remedy in federal court. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. It can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact. *United Food and Commercial Workers Union Local No. 88 v. Middendorf Meat Co.*, 794 F. Supp. 328, 330 (E.D. Mo. 1992). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**2.** ***Genuine Issues of Fact Exist Regarding Wal-Mart's Constructive Knowledge***

Since it is undisputed that Isaac was an invitee at the time of the incident, Wal-Mart's duty is defined by the Restatement (Second) of Torts § 343 which states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

5

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Rogers v. Martin*, 63 N.E.3d 316, 322 (Ind. 2016). Thus, while a landowner's duty to an invitee includes a duty to exercise reasonable care to protect the invitee from foreseeable dangers on the premises, there is no duty to ensure an invitee's safety while on the premises. *Booher v. Sheeram, LLC*, 937 N.E.2d 392, 395 (Ind. Ct. App. 2010). Because an invitor is not the insurer of the invitee's safety, before liability may be imposed on the invitor it must have actual or constructive knowledge of the danger. *Carmichael v. Kroger Co.*, 654 N.E.2d 1188, 1191 (Ind. Ct. App. 1995).

Isaac has not identified any evidence that would demonstrate Wal-Mart or its employees had actual knowledge of the puddle. Therefore, Isaac's case rises and falls on whether Wal-Mart had constructive knowledge of the hazardous condition. To establish constructive knowledge, a plaintiff must show a "condition [which] has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1088 (7th Cir. 2018). While there is no bright line for determining how much time demonstrates a lack of ordinary care, periods of less than fifteen minutes have generally been held to be insufficient. *See Robinson v. Kroger*, 2014 WL 3405874, at *4 (S.D. Ind. 2014) (finding no issue of fact on constructive knowledge where foreign substance that caused plaintiff's fall was found to be present less than ten minutes); *Williams v. Meijer, Inc.*, 2013 WL 3146981, at *3 (S.D. Ind. 2013) (finding no issue of fact on constructive knowledge where area of slip-and-fall had been inspected seven to twelve minutes before the plaintiff's fall).

6

Despite Issac's lack of personal knowledge, the Court finds that the designated evidence raises genuine issues of fact regarding the length of time the clear liquid was present on the ground in the area of Isaac's fall. At 30:10 and 36:45 of the video, two women exhibit conduct that indicates the presence of something on the ground in the subject area. Both appear to have issues with their footwear, and both inspect the ground for an extended period. The Court cannot say for certain that either woman stepped in or is inspecting the clear liquid that caused Isaac's fall, but all reasonable inferences must be drawn in favor of Isaac. *Bellaver*, 200 F.3d at 491–92. The Court finds it reasonable to infer that three individuals (Isaac and the other two women) experiencing footwear issues in the same area were reacting to the same condition.

Wal-Mart attempts to avoid this conclusion by describing any attempt to draw conclusions from the actions of other customers as "speculation or conjecture." (ECF No. 28 at 4). The Court disagrees. The case Wal-Mart relies upon, *Abioye v. Sundstrand Corp.*, 164 F.3d 364 (7th Cir. 1998), is inapposite. The exact quote from that employment discrimination case is "conjecture or speculation regarding the employer's motives cannot be used to defeat a summary judgment motion." *Id*. at 368. This is not a discrimination case, nor is the Court being asked to determine the motivations of an employer in making an employment decision. *Abioye* adds nothing to the analysis.

More to the point, what Wal-Mart calls speculation and conjecture is little more than proof of a fact, or a series of facts, that tends to show that some other fact is true: i.e., circumstantial evidence. *See* Seventh Circuit Pattern Jury Instructions (Civil), Instruction 1.12. Here, a jury could conclude, from proof that a woman lost her flip-flop and then she and her male companion spent several seconds looking at the floor, that there was some condition on the floor that they were inspecting. Similarly, a jury could conclude, from proof that a different woman stared at the floor

7

before appearing to rub something from the bottom of her shoe, that she had stepped in a puddle or some other substance in that area. While Wal-Mart would appear to require Isaac to produce direct evidence of the puddle, like a photo or witness testimony, the law draws no distinction between the weight to be given to either direct or circumstantial evidence, and it is well-established that circumstantial evidence can create genuine issues of fact that preclude the entry of summary judgment. *Id.*; *Lublin Corp. v. United States*, 98 Fed. Cl. 53, 59 (2011).

Given the evidence in the record, a jury could reasonably conclude that the puddle was created anywhere from thirty to thirty-five minutes prior to Isaac's fall; the period between the woman dropping her wallet and the woman losing her shoe. That amount of time takes this case out of the range where constructive knowledge can be determined as a matter of law, and into the area where the exercise of reasonable care is a jury question. *See*, *e.g.*, *Tyrell v. Sears, Roebuck & Co.*, 392 F.2d 868, 870 (7th Cir. 1968). Wal-Mart's Motion for Summary Judgment must be denied.

**C.  Conclusion**

For the foregoing reasons, the Court DENIES Wal-Mart's Motion for Summary Judgment (ECF No. 20) and its Motion to Strike Portions of Affidavit of Teresa Isaac (ECF No. 29).

SO ORDERED on February 12, 2020.

 s/ Holly A. Brady  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT